ACKERMANN & TILAJEF, P.C.
Craig J. Ackermann, Esq. (State Bar No. 229832)
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 277-0614
Facsimile: (310) 277-0635
cja@ackermanntilajef.com

(See next page)
Attorneys for Plaintiff Esayas Gezahegne

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESAYAS GEZAHEGNE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WHOLE FOODS MARKET CALIFORNIA, INC., a California Corporation, and DOES 1 THROUGH 100 <br> Defendants | **Case No. _____** <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> **(1) OBTAINING CONSUMER REPORTS WITHOUT FACIALLY VALID AUTHORIZATIONS IN VIOLATION OF THE FAIR CREDIT REPORTING ACT [15 U.S.C. § 1681b (b)(2)(A); 15 U.S.C. §1681n(a)]; AND** <br><br> **DEMAND FOR JURY TRIAL** |

MICHAEL MALK, ESQ., APC
Michael Malk, Esq. (State Bar No. 222366)
1180 South Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone: (310) 203-0016
Facsimile:  (310) 499-5210
mm@malklawfirm.com

Plaintiff Esayas Gezahegne ("Plaintiff"), individually and on behalf of all those similarly situated, by and through his counsel, brings this Class Action Complaint ("Complaint") against Defendant ("Defendant"), and alleges as follows:

## I.  <u>NATURE OF ACTION</u>

1.  Plaintiff brings this action on behalf of himself, and as a nationwide class action on behalf of all individuals who executed online authorization forms permitting Defendant to obtain a consumer report as part of the employment application process at any time from January 28, 2009 until the present (the "Class Period"), challenging Defendant's uniform policy to obtain consumer reports on the basis of legally invalid authorization form that contained language constituting a waiver of claims against those who obtain the consumer reports. Specifically, Defendant's use of authorization form containing a liability waiver constitutes a willful violation of the Fair Credit Reporting Act's requirement that the authorization forms be set forth in a document that "consists solely of the disclosure", and its inclusion in Defendant's forms not only invalidates the forms but also triggers statutory damages in the amount of up to $1,000 for each individual for whom Defendant obtained a consumer report without a facially valid authorization,

as well as punitive damages, and attorneys' fees and costs, all of which is sought now by Plaintiff and the members of the Class.

## II. <u>JURISDICTION AND VENUE</u>

2. Subject matter jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331(a) and 15 U.S.C. §1681p of the Fair Credit Reporting Act, codified at 15 U.S.C. §1681 et seq. (hereinafter "FCRA"), because this case involves federal FCRA claims and thus arises under the laws of the United States.

3. Defendant is within the personal jurisdiction of this Court.  Defendant transacts business throughout the United States, including in the State of California. Thus, Defendant has obtained the benefits of the laws of the United States and the State of California and is subject to personal jurisdiction by this court.  Plaintiff is a citizen of the state of California and therefore subject to personal jurisdiction in this court.

4. Venue is also proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims, as well as the course of conduct charged herein, occurred in Alameda County within this District and this Division.

///

///

### III. <u>THE PARTIES</u>

5.  Plaintiff, who at all relevant times referenced herein, resided in California, is a former employee of Defendant.  In or around April 7, 2011, in connection with Plaintiff's application for employment with Defendant, Plaintiff executed an online FCRA authorization form that purported to allow Defendant to obtain consumer reports on him.

6.  Upon information and belief, Defendant is a Corporation doing business in California and throughout the United States by operating numerous locations throughout the State of California and the United States.  Its headquarters and principal place of business is located in 550 Bowie Street, Austin, Texas 78703. Defendant obtained consumer reports on Plaintiff and similarly situated persons without having obtained facially valid FCRA authorization forms.

7.  Throughout the Class Period, Defendant employed consumer reports on thousands of applicants and employees in violation of the FCRA without paying them statutory or punitive damages for Defendant's violations.

### IV. CLASS ACTION ALLEGATIONS

8.  Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. Rule 23(b)(3) on behalf of a class consisting of:

**All individuals who executed online authorization forms**

**permitting Defendant to obtain a consumer report as part of an**

**employment application at any time from February 7, 2009 until**

**the present (the "Class Period"),**

9. <u>Numerosity</u>. There are thousands of individuals in the Class.  Given

Defendant's systemic failure to comply with the FCRA, the members of the

Class are so numerous that joinder of all members is impractical.

10. <u>Typicality</u>. Plaintiff's claims are typical of the claims of the members of the

Class, because all class members executed authorization forms permitting

Defendant to obtain a consumer report as part of their employment

application process that were facially invalid due to their inclusion of a

liability waiver within the authorization forms.

11. <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent

the interests of the Class. Plaintiff has no conflict of interest with any

member of the Class. Plaintiff has retained counsel competent and

experienced in complex class action litigation with sufficient financial

resources to litigate this case through class certification and trial.

12. <u>Predominance of Common Issues</u>.  Common questions of law and fact exist

as to all members of the Class, and predominate over any questions solely

affecting individual members of the Class. Among the questions of law and fact common to Plaintiff and the Class are:

a. Whether Defendant's online FCRA authorization forms executed by Plaintiff and the Class were facially invalid by virtue of their inclusion of language constituting a release of claims such that the authorization forms no longer constituted a "document that consists solely of the disclosure", as required by Section 1681b (b)(2)(A) of the FCRA;

b. Whether Defendants violated Section 1681b (b)(2)(A) of the FCRA by including language constituting a release of claims as part of its online FCRA authorization forms;

c. Whether Defendant willfully violated the FCRA thereby triggering statutory damages to Plaintiff and the members of the Class as set forth in Section 1681n(a) of the FCRA;

d. Whether Plaintiff and the members of the Class are entitled to statutory damages under Section 1681n(a) of the FCRA and, if so, the amount and calculation of such statutory damages; and

e. Whether Plaintiff and other class members are entitled to recover punitive damages under Section 1681n(a)(2) of the FCRA and, if so, the amount and calculation of such punitive damages.

13. Class action treatment is superior to any alternative to ensure the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individuals would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class members are readily identifiable from Defendant's employment applicant and other records.

14. Defendant's actions are generally applicable to the entire Class. Prosecution of separate actions by individual members of the Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendants.

15. Because joinder of all members is impractical, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, the statutory damage amount at stake for each class member— from $100 to $1,000 for each Class member — while

substantial in the aggregate, is not sufficient to enable Class members to

maintain separate individual suits against Defendant.

## V. <u>FACTUAL ALLEGATIONS</u>

16. Plaintiff repeats and re-alleges each and every allegation set forth in all of

the foregoing paragraphs as if fully set forth herein.

17. Throughout the Class Period, in connection with his and their online

applications for employment, Plaintiff and all of the members of the putative

Class executed an online authorization form purportedly authorizing

Defendant to obtain consumer reports pertaining to them, including criminal

background checks, credit checks and other similar reports.

18. The online authorization forms all contained language releasing those who

obtained the consumer reports from all liability, in violation of the FCRA's

requirement that the authorizations be pristine documents that contain

nothing other than the required disclosures and the requested authorization.

In other words, Defendant's authorizations forms were facially invalid.

19. On or about April 7, 2011, Plaintiff submitted an online job application. On

the page titled "Consent," Plaintiff electronically initialed next to Paragraph

2 which stated:

"I hereby authorize Whole Foods Market to thoroughly investigate my references, work record, education and other matters related to my suitability for employment and, further, authorize the references I have listed to disclose to the company any and all letters, reports, and other information related to my work records, without giving me prior notice of such disclosure. In addition, I hereby release the company, my former employers and all other persons, corporations, partnerships and associations from any and all claims, demands or liabilities arising out of or in any way related to such investigation or disclosure."

In addition to Paragraph 2, the page marked "Consent" contains several other paragraphs which certify that the applicant has not knowingly withheld any information that might adversely affect his chances for employment; acknowledges that the application for employment does not create an employment contract; informs the applicant that should a search of public records be conducted, the applicant is entitled to copies of any such public records; and the applicant waives the receipt of a copy of any public record described in the previous paragraph.

Plaintiff electronically initialed the final Paragraph (6), which states "I have read and understand the Candidates Rights under the fair (sic) Credit Reporting Act (View/Print Candidates Rights under the FRCA Now)."

Plaintiff electronically initialed the bottom of the entire page and the computer stamped it with the date "4/7/2011."

20. On information and belief, Plaintiff then came in for an informal personal interview on April 27, 2011 where Plaintiff was told he was hired and should report on May 12, 2011 for his first day of work.

21. Defendant's internal document "Interview Steps/Pre-Hire Checklist" is a form that is attached to the Applicant's Interview Guide. Each section contains the various steps which must be completed in a particular order that Defendant requires which take an applicant from phone screening through the applicant's hiring.

Section 1 of the checklist "Before the Interview" contains the tasks to be completed during a telephone screening. One of the bulleted points directs Defendant's screener to "Ask the applicant to review and sign the application." Another bulleted line expects Defendant's screener to verify the applicant's Name, Address and Social Security Number." Since the telephone screener had yet to meet the applicant, the reference to signing the application and verifying the Social Security Number can only refer to the online job application and the company's preparation to already begin requesting a credit check on the job applicant.

According to Defendant's checklist, Plaintiff completed the in-person interview on April 27, 2011. In Section 5 titled "Social Security Verification and Background Check (PBS process)," there is a box checked off where Defendant's management indicated it had "Completed Lexis Nexis background check…Date background check completed 5/4/11." At the bottom of the checklist, it is signed by three of Defendant's management, one of which signed above the words "PBS Signature," presumably the signature reflects Defendant's manager who performed the credit report verification.

22. On May 12, 2011, Plaintiff arrived for his first day of work where Defendant provided Plaintiff with a form titled "Disclosure To Employment Applicant Regarding Procurement Of A Consumer Report." This form is compliant with the requirements of the FRCA. The "Disclosure To Employment Applicant Regarding Procurement Of A Consumer Report" states:

"In connection with your application for employment, we may procure a consumer report on you from Lexis Nexis Screening Solutions as part of the process of considering your candidacy as an employee. In the event the at that information from the report is utilized in whole or in part in making an adverse decision, we will provide you with a copy of the consumer report and a description in

writing of your rights under the federal Fair Credit Reporting

Act…By your signature below, you hereby authorize us to obtain a

consumer report about you in order to consider you for employment."

Plaintiff signed this disclosure in his own hand, but was unable to fill in the date

it was signed. Incredulously, this legal document lacks a space for an applicant to

write in the date. Furthermore, the document "Disclosure To Employment

Applicant Regarding Procurement Of A Consumer Report" which was signed on

May 12, 2011 could not cure the invalid online FCRA disclosure/authorization

form Plaintiff signed on April 7, 2011 since Defendant's own records indicate that

Defendant acted under the belief it had already fulfilled the requirements under

FCRA and as a result Defendant performed a credit check on Plaintiff on May 4,

2011.

23. Despite having no valid FCRA disclosure/authorization forms on file for

Plaintiff and the members of the Class, Defendant nevertheless obtained

thousands of consumer reports throughout the Class Period on Plaintiff and

the members of the Class in clear violation of the FCRA.

24. Defendant's obtaining consumer reports without having facially valid

authorization/disclosure forms constitutes a willful violation of the FCRA,

triggering Defendant's obligation to pay statutory and punitive damages to

Plaintiff and the members of the Class under the FCRA and applicable law.

# VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### OBTAINING CONSUMER REPORTS WITHOUT HAVING FACIALLY VALID AUTHORIZATIONS ON FILE IN VIOLATION OF THE FAIR CREDIT REPORTING ACT

### [15 U.S.C. § 1681b (b)(2)(A); 15 U.S.C. §1681n(a)]

25. Plaintiff re-alleges and incorporates by reference the information set forth in all preceding paragraphs, as though fully set forth and alleged herein.

26. Pursuant to the FCRA, consumer reports may be issued for "employment purposes," 15 U.S.C. § 1681b(a)(3)(B), including the evaluation of "a consumer for employment, promotion, reassignment or retention of an employee." *Id*. at §1681a(h).

27. The FCRA requires that, ***prior*** to procuring a consumer report on an applicant for employment, an employer must: (1) provide a clear and conspicuous disclosure to each application in writing that a consumer report may be obtained for employment purposes; and (2) obtain the applicant's authorization in writing to obtain the report.  15 U.S.C. § 1681b(b)(2)(A) Section 1681b(b)(2)(A) further specifies that the disclosure must be in writing "in a document that consists solely of the disclosure".

28. Specifically, Section 1681b(b)(2)(A) provides, in relevant part:

"… a person may not procure a consumer report, or cause a

consumer report to be procured, for employment purposes with

respect to any consumer, unless—

> (i)    ***a clear and conspicuous disclosure*** has been made
>
> to the consumer at the time before the report is
>
> procured or caused to be procured, ***in a document***
>
> ***that consists solely of the disclosure***, that a
>
> consumer report may be obtained for employment
>
> purposes.; and
>
> (ii)   the consumer has authorized in writing … the
>
> procurement of the report to that person." 15
>
> U.S.C. § 1681b (b)(2)(A) (emphasis added).

29. In the instant case, Defendant required Plaintiff to sign two separate forms;

one through the computer as part of the online job application which is

invalid since it included a waiver of claims in its authorization form that

were executed by applicants for employment nationwide throughout the

Class Period; the second form, which is a legal disclosure, was only signed

by Plaintiff ***after*** the credit report investigation was already performed.

30. Defendant's inclusion of a waiver provision in its authorization forms

executed by applicants facially contravenes the FCRA's requirement that a

"clear and conspicuous" disclosure appear "*in a document that consists solely of the disclosure*." 15 U.S.C. §1681(b)(2)(A)(i) (emphasis added).

31. As a matter of law, the inclusion of language constituting a release of claims invalidates the authorization form for purposes of the FCRA. *See Reardon v. ClosetMaid Corporation*, No. 2:08-CV-01730, 2013 U.S. Dist. LEXIS 169821 (W.D.Pa. Dec. 2, 2013) (granting partial summary judgment to plaintiff on plaintiff's section 1681b(b)(2)(a) claim, noting that "Closet maid's inclusion of a release provision in the Authorization Form … facially violates section 1681b(b)(2(A)(i)" because "the Authorization form simply does not comply with the FCRA's express requirement that the disclosure appear in a document that consists solely of a disclosure (or, at most, a disclosure and authorization only."); *Singleton v. Domino's Pizza*, No. 11-1823, 2-12 W.L. 245965, *9 (D.Md. Jan. 25, 2012) (denying employer's motion to dismiss plaintiff's section 1681b(b)(2)(a) claim, finding that "both the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document"); *see also,* Letter from William Haynes, Attorney, Div. of Credit Practices, Fed Trade Comm'n to Richard W. Hauxwekk, CEEO, Accufax Div. (June 12, 1998), 1998 W.L. 34323756 (F.T.C.) (noting that the inclusion of a waiver in a disclosure form will violate the FCRA); Letter

from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n to Richard Steer, Jones Hirsh Connors & Bull, P.C. (Oct. 21, 1997), 1997 W.L. 33791227 (F.T.C.) (although disclosure form may include authorization itself, nothing else should be included in the disclosure form).

32. The FCRA permits a plaintiff to recover actual, statutory and/or punitive damages, along with attorneys' fees, in cases of willful noncompliance. See 15 U.S.C. §1681n(a)(1)-(3).   A defendant acts willfully under the FCRA by either knowingly or recklessly disregarding its statutory duty. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57-60 (2007).

33. Here, because the FCRA itself and the FTC's applicable guidance are all clear and unambiguous that language constituting a release of claims cannot be included in FCRA authorization forms, Defendant's inclusion of a liability waiver in its authorization forms constitutes a willful violation of the FCRA's disclosure requirement, as a matter of law, triggering statutory damages.  *Reardon v. ClosetMaid Corporation*, No. 2:08-CV-01730, 2013 U.S. Dist. LEXIS 169821 (W.D.Pa. Dec. 2, 2013).

34. Pursuant to 15 U.S.C. §1681n(a)(1)(A) and *Reardon*, Plaintiff and the members of the Class are each entitled to recover statutory damages of "not less than $100 and not more than $1,000";

35. Pursuant to 15 U.S.C. §1681n(a)(2), Plaintiff and the members of the Class are also entitled to recover punitive damages as the court may allow.

36. Pursuant to 15 U.S.C. §1681n(a)(3), if Plaintiff and the members of the Class prevail, they are also entitled to recover costs of suit with reasonable attorneys' fees, as determined by the court.

## VII. **DEMAND FOR JURY TRIAL**

37. Plaintiff hereby demands trial by jury on his individual and class-wide claims stated herein against Defendant.

## VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, prays for judgment against Defendants as follows:

a) An Order than this action may proceed and be maintained as a class action on behalf of the Class;

b) On the First Cause of Action:

1. A determination and judgment that Defendant willfully violated 15 U.S.C. §1681(b)(2)(A)(i) and the FCRA by obtaining consumer reports on Plaintiff and the members of the Class without having facially valid authorization forms;

2.    Pursuant to 15 U.S.C. §1681n(a)(1)(A), an award of statutory damages to Plaintiff and the members of the Class in an amount equal to $1,000 for Plaintiff and each member of the Class for Defendant's willful violation of the FCRA;

3.    Pursuant to 15 U.S.C. §1681n(a)(2), an award of punitive damages to Plaintiff and the members of the Class in an amount to be determined by the Court;

4.    An award providing for payment of costs of suit and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3); and

c)    For all other relief as this Court deems proper.

Dated:   February 7, 2014            Respectfully submitted,

CRAIG ACKERMANN, ESQ.
MICHAEL MALK, ESQ.

By:    _____ /S/ Craig Ackermann _____
Craig Ackermann
Attorneys for Plaintiff and the Class